## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **MICHAEL H.,**[1] | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 20 C 5696** |
| **v.** | ) | |
| | ) | **Magistrate Judge** |
| **KILOLO KIJAKAZI, Acting** | ) | **Maria Valdez** |
| **Commissioner of Social Security,**[2] | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security determining that Plaintiff Michael H. is liable for an overpayment in the amount of $18,392. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion to reverse the Commissioner's decision [Doc. No. 17] is granted in part, and the Commissioner's cross-motion for summary judgment [Doc. No. 27] is denied.

---

[1] In accordance with Internal Operating Procedure 22 – Privacy in Social Security Opinions, the Court refers to Plaintiff only by his first name and the first initial of his last name.

[2] Kilolo Kijakazi has been substituted for her predecessor pursuant to Federal Rule of Civil Procedure 25(d).

## BACKGROUND

On September 7, 2006, Plaintiff filed an application for old age benefits under the Social Security Act, and he began receiving such benefits as of September 1, 2006. However, it would have been more beneficial to Plaintiff if he had filed a reduced widower's benefit claim rather than a reduced old age benefits claim. On October 23, 2014, Plaintiff filed a reduced widower's benefit claim, alleging that due to receiving incomplete information from the Social Security Administration at the time he filed for reduced retirement benefits in September 2006, he did not file a reduced widower's benefit claim, but would have if he was fully informed. The issue of misinformation went before an Administrative Law Judge ("ALJ"). In a decision dated November 17, 2015, the ALJ concluded that the agency gave Plaintiff incomplete information in September 2006, as Plaintiff had indicated at the time that he was a widower, but he was not informed that he could file for widower's benefits. The ALJ determined that Plaintiff would have a "deemed" filing date of September 7, 2006 and that Plaintiff's widower's benefits should be retroactively awarded back to that date based on his October 23, 2014 application for benefits.

Plaintiff thereafter sought effectuation of the ALJ's decision. Prior to effectuating the decision, the agency's effectuating component filed a protest memo, objecting to effectuation because it would result in an outcome that was disadvantageous to Plaintiff. It was observed that using a deemed filing date for the widower's benefits, without withdrawal of the old age benefits claim, would result in a new entitlement pattern, requiring refund of previously paid benefits and a large

2

overpayment assessed against Plaintiff. The Social Security Administration Appeals Council refused to review the ALJ's decision, but noted that the agency's effectuating component's assessment was correct in that Plaintiff was unable to withdraw his claim for old age benefits per a revision to 20 C.F.R. § 404.640. The effectuating component advised Plaintiff and his representative that effectuation of the claim would result in an obligation to refund benefits already paid. Plaintiff nonetheless requested that the widower's claim be processed with the deemed filing date ordered by the ALJ.

On February 28, 2017, the Social Security Administration issued a notice informing Plaintiff that he was overpaid Title II benefits in the amount of $18,392 from September 1, 2006 to March 1, 2017. The overpayment resulted from effectuation of the reduced widower's claim as of September 2006. More specifically, the overpayment arose because the agency's effectuating component would not approve Plaintiff's request for withdrawal of his September 2006 benefits application. The retroactive application for widower's benefits, and the inability to withdraw the application for retirement benefits, changed the entitlement pattern, resulting in a change in the benefit amount retroactively and the assessment of the $18,392 overpayment.

On March 13, 2017, Plaintiff filed a request for reconsideration of the determination that he was liable for an overpayment. Plaintiff's reconsideration request was denied on January 31, 2018. Plaintiff thereafter filed a written request for a hearing, and a hearing before an ALJ was held on November 29, 2018. In a

3

decision dated February 27, 2019, the ALJ determined that Plaintiff had been overpaid within the meaning of the Social Security Act and was liable for the overpayment amount of $18,392 for the period from September 1, 2006 to March 1, 2017. The Appeals Council then denied Plaintiff's request for review, leaving the ALJ's February 27, 2019 decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## DISCUSSION

## I. JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997).

The Commissioner is obligated by statute to seek repayment of funds when an overpayment of benefits occurs. 42 U.S.C. § 404(a); *Heins v. Shalala*, 22 F.3d 157, 159 (7th Cir. 1994). The Commissioner may not recover an overpayment, however, where: (1) the claimant was not at fault in causing the overpayment; and (2) recovery would either defeat the purpose of 42 U.S.C. § 404 or otherwise be against "equity and good conscience." 42 U.S.C. § 404(b); 20 C.F.R. § 404.506.

4

If the recipient was at fault in causing the overpayment, the ALJ need not examine whether recovery would defeat the purpose of the statute or be against equity. *Heins*, 22 F.3d at 163 n.2. If the ALJ finds the recipient was not at fault, the analysis proceeds to whether recovery would defeat the purpose of the statute or be against equity. "Recovery defeats the purposes of the Act when it 'deprives a person of income required for ordinary and necessary living expenses,' depending on the income and financial resources of the recipient." *Menard v. Commissioner of Social Security*, Civil No. 14-cv-961-JPG-CJP, 2015 WL 13842715, at *2 (S.D. Ill. Sept. 8, 2015) (citation omitted). Repayment could be against equity if, for example, the recipient "changed his position for the worse, or relinquished a valuable right, because of reliance on a notice that payment would be made or because of the overpayment itself[.]" *Begoun v. Astrue*, No. 09 C 1555, 2011 WL 307375, at *7 (N.D. Ill. Jan. 28, 2011).

The Commissioner bears the burden of proving that an overpayment of benefits occurred. *Wilkening v. Barnhart*, No. 02 C 9096, 2004 WL 1005718, at *5-6 (N.D. Ill. Apr. 27, 2004), *affirmed*, 139 F. App'x 715 (7th Cir. 2005). The recipient has the burden of proving that he or she is entitled to waiver of repayment if the overpayment is established. *Begoun*, 2011 WL 307375, at *8 (citations omitted).

## II.    ANALYSIS

As initial background, prior to 2010, the Social Security Administration placed no time limits on an individual's ability to withdraw an application for retirement benefits. In 2010, the Social Security Administration amended 20 C.F.R. § 404.640 to provide that an old age benefit application can be withdrawn if "[t]he request for withdrawal is filed within 12 months of the first month of entitlement" and "[t]he claimant has not previously withdrawn an application for old age benefits." 20 C.F.R. § 404.640(b)(4)(i)-(ii). So, the existing regulation was modified to establish a 12-month time limit for the withdrawal of old age benefits applications and to allow only one application withdrawal per lifetime. The new regulation was published in the Federal Register on December 8, 2010, with a public comment period ending on February 7, 2011. However, the effective date of the regulation was December 8, 2010, the same date the changes were published.

As stated above, the ALJ found in her February 27, 2019 decision that Plaintiff is liable for an overpayment of $18,392 for the period of September 1, 2006 to March 1, 2017. In arriving at that conclusion, the ALJ provided the following reasoning:

> [P]er the amended regulation, an application for old age benefits may be withdrawn only if the request for withdrawal is filed within 12 months of the first month of entitlement. (20 CFR 404.640(b)(4)(i).) As noted above, the claimant affirmed that he did not contact the Agency to request to withdraw his application for old age benefits prior to December 8, 2010. Because the claimant did not request to withdraw his application for benefits by December 8, 2010, he did not submit a timely request, as any request submitted after December 8, 2010 would be subject to the new regulatory requirement, and would be more than 12 months from the first month of entitlement. Therefore, the Agency

> correctly denied the claimant's request to withdraw his application for
> old age benefits as untimely.

(R.30.) The ALJ's decision in that regard was an affirmation of the agency's prior

determination that the overpayment resulted "because the effectuating component

of Social Security could not approve the claimant's request for withdrawal of [the]

application of old age benefits" and "the inability to withdraw the application for

retirement benefits changed the entitlement pattern, resulting in a change in the

benefit amount retroactively." (*Id.* at 28.)

In seeking a reversal of the ALJ's decision, Plaintiff argues, *inter alia*, that

"[a]s applied to Mr. Hoit, the 2010 regulatory change is impermissibly retroactive

and denies him due process." (Pl.'s Br. at 3.) The Seventh Circuit has explained that

"[a]s a general rule, '[r]etroactivity is not favored in the law.'" *Velasquez-Garcia v.*

*Holder*, 760 F.3d 571, 579 (7th Cir. 2014) (quoting *Bowen v. Georgetown Univ.*

*Hosp.*, 488 U.S. 204, 208 (1988)). Generally, "an administrative agency may not

promulgate retroactive rules unless Congress has provided the agency with express

authority to do so." *Beller v. Health & Hosp. Corp. of Marion Cnty., Indiana*, 703

F.3d 388, 391 (7th Cir. 2012). "A rule is considered to be retroactive when it

'attaches new legal consequences to events completed before its enactment.'"

*Velasquez-Garcia*, 760 F.3d at 579 (citation omitted). "The inquiry 'demands a

commonsense, functional judgment' and 'should be informed and guided by familiar

considerations of fair notice, reasonable reliance, and settled expectations.'" *Id.*

(citations omitted).

Against this general legal backdrop, every court to consider the issue has determined that 20 C.F.R. § 404.640 may not be applied retroactively under circumstances similar to the case at bar. *See Low v. Berryhill*, 334 F. Supp. 3d 1165 (W.D. Wash. 2018); *Terwilleger v. Comm'r of Soc. Sec.*, No. 1:18-CV-11, 2019 WL 336877 (S.D. Ohio Jan. 28, 2019), *report and recommendation adopted sub nom. Terwilleger v. Comm'r of Soc. Sec.*, No. 1:18CV11, 2019 WL 1317880 (S.D. Ohio Mar. 22, 2019); *Gibbon v. Berryhill*, No. 5:17-CV-402-D, 2019 WL 1607726 (E.D.N.C. Feb. 22, 2019), *report and recommendation adopted Gibbon v. Berryhill*, No. 5:17-CV-402-D, 2019 WL 1601356 (E.D. N.C. Apr. 15, 2019), *aff'd sub nom. Gibbon v. Saul*, 837 F. App'x 230 (4th Cir. 2021); *Hughes v. Kijakazi*, No. 3:20-CV-281 RRB, 2021 WL 5283277 (D. Alaska Nov. 12, 2021). The analysis offered by the court in *Low* is instructive:

> The SSA's 12-month time limit is impermissibly retroactive as applied to Plaintiff. It did not merely clarify existing legal principles, but altered the consequences of Plaintiff's prior actions. When she began receiving retirement benefits, Plaintiff could withdraw her application at any time. Plaintiff could decide to withdraw her application and repay the early retirement benefits she had received, preserving her eligibility to later receive unreduced retirement benefits, or to seek divorced spouse benefits. But once the SSA promulgated its 12-month withdrawal time limit, Plaintiff immediately lost the ability to withdraw her application. *See* 20 C.F.R. 404.640(b)(4)(i). She had no notice and no opportunity to conform her actions based on her settled expectations of the law. The SSA's 12-month time limit was therefore impermissibly retroactive as applied to Plaintiff.

*Low*, 334 F. Supp. 3d at 1170-71.

The Court reaches the same determination in this case, and finds that the amendment to Section 404.640 is impermissibly retroactive as applied to Plaintiff. As an initial matter, the Social Security Act authorizes the Social Security

Administration to "adopt reasonable and proper rules and regulations," but it does not expressly authorize retroactive rule-making. *See* 42 U.S.C. § 405(a). More to the point, "Congress has not authorized the Social Security Administration to promulgate retroactive rules." *Kyler v. Kijakazi*, No. 1:19-CV-03334, 2022 WL 1165859, at \*5 (D.D.C. Apr. 20, 2022) (citations omitted); *see also Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) ("The [Social Security] Act does not generally give the SSA the power to promulgate retroactive regulations.") (citations omitted); *Gibbon*, 2019 WL 1607726 at \*5-6 ("The second reason the new regulation [20 C.F.R. § 404.640] must not be applied retroactively is that the SSA did not have the power to promulgate rules retroactively."). Furthermore, applying the 2010 regulatory change to Plaintiff attaches new legal consequences to his September 2006 early retirement application, an event completed before the revision to Section 404.640 went into effect. When the revision became effective, Plaintiff immediately lost the ability to withdraw his September 2006 benefits application, even though it has been determined that the agency misinformed Plaintiff at the time the application was filed. Under the circumstances, the Court holds that the revision to Section 404.640 cannot permissibly be applied to Plaintiff. *See Terwilleger*, 2019 WL 336877 at \*5-7 ("The Court finds the Social Security Administration's application of the amended withdrawal regulation to plaintiff's request to withdraw his second retirement benefits application is impermissibly retroactive."); *Hughes*, 2021 WL 5283277 at \*2 ("[The claimant] first filed for retirement in 2006, before the 12-month restriction, and this Court concluded that the ALJ improperly applied the

new regulation retroactively to Plaintiffs."). From a commonsense standpoint, the Court agrees with Plaintiff that "[t]he 2010 regulatory change should not preclude the Social Security Administration from properly correcting the Agency's admitted error" of misinforming Plaintiff back in 2006. (Pl.'s Br. at 3.)

Defendant argues that "[a]lthough plaintiff challenges the 2010 regulatory change, the agency had authority to do so, as it properly exercised the good cause exception to the notice and public comment procedures set forth in the Administrative Procedure Act ["APA"] by Congress." (Def.'s Memo. at 1.) The Court finds that Defendant's contentions in that regard amount to a long *non sequitur*. Defendant's assertion appears to arise from a strained reading of an argument raised (but not ruled upon) in the *Terwilleger* case. That case involved a unique set of circumstances in that the plaintiff there sought to withdraw his prior application within the nominal public comment period for the amendment to the regulation (which, again, was the two-month period from December 8, 2010 to February 7, 2011). Here, Plaintiff's request to withdraw his application came long after the public comment period, making this factual wrinkle inapplicable here. And, in any event, the *Terwilleger* court did not hold that the agency's ability to bypass normal comment procedures under the APA equated to an entitlement to promulgate retroactive regulations. To the contrary, the *Terwilleger* court implicitly rejected any APA-related arguments in finding, as indicated above, that the revised regulation was impermissibly retroactive as applied to the plaintiff in that case. Plaintiff is correct that "[t]he Commissioner's argument that not violating a notice

10

provision of the APA empowers her to engage in retroactive rulemaking is wholly legally unsupported." (Pl.'s Reply at 1.) At bottom, there is no legal authority (and Defendant does not point to any) specifically supporting the proposition that the Social Security Administration can promulgate retroactive regulations if it does so for "good cause." Accordingly, Defendant's argument for the retroactive application of Section 404.640 must be rejected, and Plaintiff must be permitted to withdraw his September 2006 benefits application. Any other result would be against equity and good conscience.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to reverse the Commissioner's decision [Doc. No. 17] is granted in part, and the Commissioner's cross-motion for summary judgment [Doc. No. 27] is denied. The Court finds that this matter should be remanded to the Commissioner for further proceedings consistent with this Order. On remand, Plaintiff shall be permitted to withdraw his September 2006 application for early retirement benefits or use another procedure which produces the same result. The Commissioner shall thereafter take all further action as appropriate in light of the application withdrawal.

**SO ORDERED.**                          **ENTERED:**

**DATE:**    **September 6, 2022**        _____
                                          **HON. MARIA VALDEZ**
                                          **United States Magistrate Judge**

11